IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

NORFOLK 302, LLC, t/a,                    :
HAVE A NICE DAY CAFÉ, et al.,             :
                                          :
        Plaintiffs,                       :
                                          :
v.                                        :   Civil Action No. 2:07cv203
                                          :
ESTHER H. VASSAR, Chair,                  :
Virginia Department of                    :
Alcoholic Beverage Control Board,:
et al.,                                   :
                                          :
        Defendants.                       :
_____:

FILED

NOV 21 2007

CLERK, US ... COURT

## OPINION AND ORDER

In 2002, the United States Court of Appeals for the Fourth
Circuit declared unconstitutional North Carolina's effort to ban
sexually suggestive conduct in establishments that serve
alcoholic beverages. Giovani Carandola, Ltd. v. Ralph, 303 F.3d
507 (4th Cir. 2002) (hereinafter "Carandola I"). Despite this
highly publicized decision, the Commonwealth of Virginia did not
amend its alcoholic beverage control statutes and regulations to
remedy the overbreadth problem identified by the Fourth Circuit.
Virginia's Alcoholic Beverage Control ("ABC") laws remained
unchanged even though the Court of Appeals later approved as
constitutional a "carve-out" provision that exempts sexually
suggestive matters of serious literary or artistic interest.

Giovani Carandola, Ltd. v. Fox, 470 F.3d 1074 (4th Cir. 2006)
(hereinafter "Carandola II").

Plaintiffs own various restaurants and bars in Virginia
Beach and Norfolk that serve alcoholic beverages pursuant to
licenses granted by the Virginia ABC Board (the "ABC Board").   In
this action they seek to enjoin the ABC Board from enforcing
certain statutes and a regulation strikingly similar to the laws
declared unconstitutional in Carandola I.   For the reasons set
forth below, the Court awards plaintiffs most of the preliminary
injunctive relief that they seek.

## I.   Facts and Procedural History

The Virginia General Assembly enacted the Alcoholic Beverage
Control Act, Va. Code § 4.1-100, et seq., "to legalize, regulate
and control the . . . drinking and use of alcohol."   Miller v.
Commonwealth, 2 S.E.2d 343, 346 (Va. 1939).   An important
component of this comprehensive statutory scheme is regulation of
the establishments that serve intoxicants.   Among other things,
the ABC Board is authorized to suspend and/or revoke the ABC
licenses of establishments that offer certain types of sexually
suggestive entertainment or allow patrons to engage in sexually
suggestive conduct.   These restrictions lie at the heart of
Plaintiffs' constitutional challenge.

2

Of the statutes at issue, Va. Code Ann. § 4.1-225(1)(h) covers the broadest swath of behavior.  The statute allows the ABC Board to sanction a licensee for allowing patrons to engage in any of three varieties of conduct on its premises.  It states:

> The Board may suspend or revoke any license . . . if it has reasonable cause to believe that:
>
>> 1. The licensee . . .
>>
>>     . . .
>>
>>     h. has allowed **noisy, lewd** or **disorderly conduct** upon the licensed premises, . . . .

The ABC Board implemented this statute by promulgating a regulation, 3 Va. Admin. Code § 5-50-140, that purports to define some of the prohibited conduct.  The regulation states:

> While not limited thereto, the board shall consider the following conduct upon any licensed premises to constitute **lewd** or **disorderly conduct**:
>
>> 1. The real or simulated display of any portion of the genitals, pubic hair, or buttocks, or any portion of the breast below the top of the areola, by any employee, or by any other person; except that when entertainers are on a platform or state and reasonably separated from the patrons of the establishment, they shall be in conformity with subdivision 2;
>>
>> 2. The real or simulated display of any portion of the genitals, pubic hair or anus by an entertainer, or any portion of the areola of the breast of the female entertainer.  When not on a platform or stage and reasonably separate from the patrons of the establishment, entertainers shall be in conformity with subdivision 1;
>>
>> 3. Any real or simulated act of sexual intercourse, sodomy, masturbation, flagellation,

3

or any other sexual act prohibited by law, by any
person, whether an entertainer or not; or

4. The fondling or caressing by any person,
whether an entertainer or not, of his or of
another's breast, genitals, or buttocks.

Having addressed patron conduct in section 4.1-225(1)(h),
the General Assembly turned its attention to conduct sponsored by
the licensed establishment.  Va. Code Ann. § 4.1-226(2) states,
in pertinent part:

The Board shall suspend or revoke any license . . . if
it finds that:

. . .

2. In the licensed establishment of a mixed
beverage licensee there (i) is entertainment of a
**lewd, obscene,** or **lustful nature** including what is
commonly called stripteasing, topless
entertaining, and the like, or which has employees
who are not clad both above and below the waist or
who uncommonly expose the body . . . .

Finally, both licensee and patron conduct are governed by
Va. Code. Ann. § 4.1-325(A)(11)-(13), which states:

A. [N]o mixed beverage licensee nor any agent or
employee of such licensee shall:

. . .

11. Allow any **immoral, lewd, obscene, indecent** or
**profane** conduct, language, literature, pictures,
performance or materials on the licensed premises;

12. Allow any **striptease act**, or the like on the
licensed premises;

13. Allow persons connected with the licensed
business to appear **nude** or **partially nude**; . . . .

4

After conducting two hearings and one telephonic conference, the Court preliminarily enjoined enforcement of all of the language highlighted above, except for the prohibition against "obscene" conduct.  (Docket No. 23.)  With respect to section 4.1-225(1)(h) and its implementing regulation, the Court held that the word "noisy" is unconstitutionally vague, and that the phrase "lewd or disorderly conduct" is unconstitutionally overbroad.  Regarding sections 4.1-226(2) and 4.1-325(A)(11)-(13), the Court ruled that all of the highlighted language, except the word "obscene," is overbroad.  This Opinion explains the reasoning underlying the Court's rulings.

## II.  **Analysis**

### A.  **Standing**

Before the Court can weigh the merits of Plaintiffs' constitutional challenges, it must determine whether they have standing to maintain an action that complains of restrictions on matters of serious literary or artistic value.  Plaintiffs operate bars and restaurants that trade under such names as "Hammerheads" and "The Peppermint Beach Club."  Plaintiffs' establishments are more likely to sponsor jello shooter contests than present an erotic version of Shakespeare or The Canterbury Tales.

Normally, "a litigant only has standing to vindicate his own constitutional rights." <u>Members of City Council v. Taxpayers for Vincent</u>, 466 U.S. 789, 796 (1984). However, this general principle does not apply in cases where a plaintiff challenges the constitutionality of a statute on the basis of overbreadth or vagueness. <u>See id.</u> at 798 (excepting plaintiff bringing overbreadth claim from traditional standing requirements); <u>Gooding v. Wilson</u>, 405 U.S. 518, 521 (1972) (same for vagueness claim).

This exception to ordinary standing rules derives not from any special quality of the plaintiff, but rather, from the nature of a facial attack. In this type of action, "a party seeks to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." <u>City of Chi. v. Morales</u>, 527 U.S. 41, 56 (1999). He may litigate his claim on behalf of others "who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." <u>Brockett v. Spokane Arcades, Inc.</u>, 472 U.S. 491, 503 (1985). Plaintiffs therefore have standing to maintain their action for injunctive relief, regardless of whether their own speech is threatened by that which is unconstitutional.

6

**B.  Preliminary Injunction Test**

The issuance of a preliminary injunction turns on four considerations: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." Carandola I, 303 F.3d at 511 (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1992)) (internal quotation marks omitted); see also Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., 550 F.2d 189, 193 (4th Cir. 1977) (listing factors).  Courts customarily analyze each of the factors in numerical order.  However, in the context of a facial constitutional attack, the likelihood of irreparable harm to the plaintiff hinges entirely on whether the statute in question offends the constitution.  Carandola I, 303 F.3d at 511; Mom N Pops, Inc. v. City of Charlotte, N.C., 162 F.3d 1155 (4th Cir. 1998) (unpublished table decision).  The first prong is thus "inseparably linked" with the third, so the Court will begin with an analysis of Plaintiffs' chance of success on the merits. Carandola I, 303 F.3d at 511.

     1.  Likelihood of Success on the Merits

        a. Overbreadth Challenge

A legislature must carefully balance constitutional and

7

societal concerns when drafting a statute that implicates
First Amendment rights.

> It has long been recognized that the First
> Amendment needs breathing space and that statutes
> attempting to restrict or burden the exercise of First
> Amendment rights must be narrowly drawn and represent a
> considered legislative judgment that a particular mode
> of expression has to give way to other compelling needs
> of society.

Broadrick v. Oklahoma, 413 U.S. 601, 611-12 (1973).  Regulating
speech at the epicenter of the First Amendment - namely,
"genuinely serious literary, artistic, political, or scientific
expression" - constitutes an especially delicate endeavor.  See
Miller v. California, 413 U.S. 15, 22-23 (1973).          In
analyzing an overbreadth claim, a court first must determine the
degree to which it will scrutinize the challenged statute.
Carandola I, 303 F.3d at 512.  The degree of scrutiny in a
constitutional challenge hinges on legislative intent.  Id.  If a
legislature passes a law that "proscribe[s] particular conduct
because it has expressive elements," a court will apply strict
scrutiny.[1]  Texas v. Johnson, 491 U.S. 397, 406 (1989) (emphasis
in original).

---

[1] In order to survive strict scrutiny, the "law in question
[must] be 1) narrowly tailored to 2) promote a compelling
government interest."  PSINet, Inc. v. Chapman, 362 F.3d 227, 233
(4th Cir. 2004).  A law is narrowly tailored if it does not
"burden substantially more speech than is necessary to further
the government's [] interests."  Ward v. Rock Against Racism, 491
U.S. 781, 799 (1989) (emphasis added); see Broadrick, 413 U.S. at
615.

8

On the other hand, if the law "burdens expression but is content-neutral," intermediate scrutiny applies. Conchatta v. Miller, 458 F.3d 258, 267 (6th Cir. 2006). A provision governing expressive conduct "is neutral if it is justified without reference to the content of the violator's message or point of view." Am. Life League, Inc. v. Reno, 47 F.3d 642, 649 (4th Cir. 1995). In order to withstand intermediate scrutiny, the statute still must be narrowly tailored, but it need only serve a "substantial governmental interest[]." Id. at 648-49.

The Court **HOLDS** that intermediate scrutiny is the appropriate standard against which to test the constitutionality of the Virginia statutes and regulation. This conclusion is driven by the statutes' location within the Virginia Code. As stated above, they comprise part of Virginia's Alcoholic Beverage Control Act, the purpose of which is "to legalize, regulate and control the . . . drinking and use of alcohol." Miller, 2 S.E.2d at 346. Adjacent statutory provisions address secondary effects of alcohol use, including gambling and drug use. See Va. Code Ann. §§ 4.1-225(g) (mentioning drug intoxication), -225(1)(h) (gambling), -226(1) (gambling devices). The statutes and regulation therefore "are most naturally viewed as companion provisions." See Carandola I, 303 F.3d at 515. The General Assembly did not enact the statutes to suppress the expressive component of nude dancing and other, related conduct. Rather, it

9

designed the statutes to curb the problematic secondary effects that arise from alcohol consumption. See id. at 514-15 (making similar findings as to certain North Carolina alcohol control laws).

Although the statutes and regulation which purport to govern sexually suggestive behavior are subject only to intermediate scrutiny, they do not survive even this lower level of examination. In concluding that the laws are unconstitutionally overbroad, the Court relies primarily on the Fourth Circuit's decisions in Carandola I and II.

In Carandola I, the North Carolina Alcoholic Beverage Control Commission (the "Commission") appealed the enjoinder of a North Carolina statute and its companion regulation,[2] both of

---

[2] N.C. Gen. Stat. § 18B-1005(a) prohibited an establishment licensed to serve alcohol from allowing on its premises

(4) Any conduct or entertainment by any person whose private parts are exposed or who is wearing transparent clothing that reveals the private parts;

(5) Any entertainment that includes or simulates sexual intercourse or any other sexual act; or

(6) Any other lewd or obscene entertainment or conduct, as defined by the rules of the [North Carolina Alcoholic Beverage Control] Commission.

Carandola I, 303 F.3d at 510. Pursuant to this last subsection, the Commission promulgated an explanatory rule, 4 N.C. Admin. Code 2S.0216, which provided:

(a) No permittee or his employee shall allow any person to perform acts of or acts that simulate:

10

which were designed to limit sexual conduct in establishments featuring adult entertainment. Carandola I, 303 F.3d at 511. The district court enjoined the provisions because they burdened speech of "serious artistic value" in addition to regulating conduct in the target venues. Giovani Carandola, Ltd. v. Ralph, 147 F. Supp. 2d 383, 393 (M.D.N.C. 2001).

The Fourth Circuit affirmed, holding that the challenged provisions reached "far beyond bars and nude dancing establishments." Carandola I, 303 F.3d at 516. The court provided the following explanation -

> As the Commission has conceded, the plain language of the restrictions prohibits on licensed premises any entertainment that "simulates" sexual behavior, even if performers are fully clothed or covered and even if the conduct is integral to the production - for example, a

> (1) sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts that are prohibited by law;

> (2) the touching, caressing or fondling of the breasts, buttocks, anus, vulva, or genitals;

> (3) the display of pubic hair, anus, vulva or genitals.

> (b) No permittee or his employee shall allow any person to use artificial devices or inanimate objects to depict any of the prohibited activities described in Paragraph (a) of this rule.

> (c) No permittee or his employee shall allow any person who exposes to public view any portion of his pubic hair, vulva, genitals, or anus to remain in or upon the licensed premises.

Id.

11

> political satire, a Shakespeare play depicting young
> love, or a drama depicting the horrors of rape.  The
> Commission has further conceded that the restrictions
> have the same prohibitory effect on much of non-erotic
> dance - such as a ballet in which one dancer touches
> another's buttock during a lift - and all nudity or
> simulated nudity, however brief, in productions with
> clear artistic merit - such as the Pulitzer Prize
> winning play, <u>Wit</u>.  Furthermore, evidence before the
> district court indicated that the restrictions also
> apply to much other mainstream entertainment, including
> popular and award-winning musicals such as <u>Cabaret</u>,
> <u>Chicago</u>, <u>Contact</u>, and <u>The Full Monty</u> and most kinds of
> jazz and flamenco dance.

<u>Id</u>.  The Commission offered no justification for burdening these

activities, which reside "in the heartland of [the First

Amendment's] protection" and from which no negative secondary

effects arise.  <u>Id.</u> (quoting <u>Carandola</u>, 147 F. Supp. 2d at 393).

The North Carolina law therefore failed both prongs of

intermediate scrutiny.  <u>Id.</u> at 520-21.

In 2006, the Fourth Circuit reviewed another incarnation of

North Carolina's ABC statute.  <u>Carandola II</u>, 470 F.3d at 1077.

After <u>Carandola I</u> was issued, the North Carolina legislature

narrowed section 18B-1005's reach by adding the following carve-

out provision:

> This section does not apply to persons operating
> theaters, concert halls, art centers, museums, or
> similar establishments that are primarily devoted to
> the arts or theatrical performances, when the
> performances that are presented are expressing matters
> of serious literary, artistic, scientific, or political
> value.

<u>Id.</u> at 1079.  The Fourth Circuit upheld the new version of the

statute, because the carve-out "shelter[ed] most protected activity." Id. at 1085.

i. Prohibitions on Patron Conduct

Section 4.1-225(1)(h)'s prohibition of "lewd" and "disorderly conduct," and its implementing regulation, infringe on a substantial amount of speech protected by the First Amendment. In this regard, the regulation bears a striking resemblance to the provisions enjoined in Carandola I, and the ABC Board has not attempted to distinguish the two. The ABC Board does not contend that it has an important interest in regulating "fully clothed" performances that simulate sex, "non-erotic dance," or "productions with clear artistic merit." Carandola I, 303 F.3d at 516; see also Odle v. Decatur County, Tenn., 421 F.3d 386, 399 (6th Cir. 2005) (enjoining enforcement of a similarly worded ordinance due to overbreadth problems); Ways v. City of Lincoln, Neb., 274 F.3d 514, 520 (8th Cir. 2001) (same); Tripplett Grille, Inc. v. City of Akron, 40 F.3d 129, 136 (6th Cir. 1994) (same). In fact, the ABC Board essentially makes the same concessions regarding the overbreadth of the regulation as the defendants made in Carandola I. Compare (Hr'g Tr. 30, July 3, 2007) ([T]he ABC acknowledges . . . this regulation could be construed to be overbroad."), with Carandola I, 303 F.3d at ("[T]he state has expressly conceded that the challenged restrictions do affect a substantial amount of [protected]

13

expression . . . ."). Accordingly, the regulation fails
intermediate scrutiny.

Since the regulation simply defines the statutory terms
"lewd" and "disorderly conduct," section 4.1-225(1)(h) suffers
from the same constitutional malady. The terms "lewd" and
"disorderly" cover an exceedingly broad range of behavior, some
of which is assuredly deserving of constitutional protection if
it has social worth. See Conchatta v. Miller, 458 F.3d 258, 266
(6th Cir. 2006) (enjoining as overbroad a liquor licensing
statute's ban on "lewd . . . entertainment"); J.L. Spoons, Inc.
v. City of Brunswick, 181 F.R.D. 354, 358 (N.D. Ohio 1998)
(enjoining as overbroad a liquor regulation's ban on "lewd . . .
activities"); Squire v. Pace, 380 F. Supp. 269, 278-79 (W.D. Va.
1974) (declaring statute that criminalized "disorderly" conduct
unconstitutionally vague and overbroad), aff'd, 516 F.2d 240 (4th
Cir. 1975).

The ABC Board argues that the terms "lewd" and "disorderly
conduct" are not unconstitutional, because the Supreme Court of
Virginia and the Court of Appeals of Virginia, respectively, have
attached specific definitions to those terms. The ABC Board asks
the Court to apply these definitions as narrowing constructions.

Since statutory invalidation constitutes "strong medicine,"
Broadrick, 413 U.S. at 613, the Court must determine whether "the
state courts in question have applied a narrowing construction to

14

[the same or] a similar statute" before imposing an injunction. Gaughan v. City of Cleveland, 212 F. App'x 405, 410 (6th Cir. 2007); see Gooding v. Wilson, 405 U.S. 518, 520 (1972) ("Only the [state] courts can supply the requisite construction, since of course 'we lack jurisdiction to authoritatively construe state legislation.'" (quoting United States v. Thirty-Seven Photographs, 402 U.S. 363, 369 (1971))). If the narrowing construction sufficiently limits the provision's reach, the statute may remain enforceable.

For the definition of "lewd," the ABC Board cites Pedersen v. City of Richmond, 254 S.E.2d 95, 98 (Va. 1979). For the definition of "disorderly conduct," it cites Supermarket Express, L.L.C. v. Commonwealth of Virginia, Record No. 1389-04-1, 2005 WL 645157 (Va. Ct. App. Mar. 22, 2005). However, the courts in both of those cases analyzed "lewd" and "disorderly conduct" in the context of a vagueness challenge. Statutory language is unconstitutionally vague (1) if it does not "provide a person of average intelligence a reasonable opportunity" to know what conduct is prohibited, or (2) if it "encourage[s] arbitrary and discriminatory selective enforcement." Id. at *2.

The issue before the Court in this case is not whether a licensee or patron would know whether certain conduct was lewd or disorderly. The issue is whether the statutes and regulation cast too broad a net by prohibiting lewd or disorderly conduct

15

with serious artistic or literary merit.   The definitions adopted
by the Virginia Supreme Court in <u>Pedersen</u> and the Virginia Court
of Appeals in <u>Supermarket</u> do not speak to this.

      ii.   <u>Prohibitions on Establishment Conduct</u>

The challenged language in sections 4.1-226(2) and 4.1-
325(A)(11)-(13), aside from the word "obscene," is also
unconstitutionally overbroad.   Again, while a carve-out would
most likely remedy the overbreadth, neither statute includes such
a clause.

A few examples illustrate both statutes' overbreadth.
Section 4.1-325(A)(13)'s ban on "partial[]" nudity would arguably
apply to a victorious athlete who, in celebration, takes off his
jersey and tosses it into the crowd.   A "striptease act, or the
like," as enumerated in section 4.1-325(A)(12), conceivably could
encompass any suggestive removal of clothing by a Cirque De
Soleil performer.   Finally, a multitude of postmodern paintings,
sculptures, and photographs housed in museums certainly could be
characterized as "immoral, lewd, . . . indecent, or profane"
under section 4.1-325(A)(11).   <u>See, e.g.</u>, <u>Carlifornia v. LaRue</u>,
409 U.S. 109, 127 (1972) (Marshall, J., dissenting) ("The
regulations thus treat on the same level a serious movie such as
'Ulysses' and a crudely made 'stag film.'   They ban not only
obviously pornographic photographs, but also great sculpture from
antiquity."); <u>cf.</u> <u>Walker v. Dillard</u>, 523 F.2d 3, 5 (4th Cir.

1975) (holding that the words "profane" and "incedent" as used in a criminal statute are overbroad).

### iii. <u>Prohibitions on Obscene Conduct</u>

On the other hand, the term "obscene" takes on special meaning in legal parlance.  Obscene speech, by definition, never can fall within the ambit of the First Amendment.  <u>Miller v. California</u>, 413 U.S. 15, 23 (1973).  The Court presumes that the General Assembly did not intend for the word "obscene" to have a broader definition than the Supreme Court has given to it.  <u>See</u> <u>Planned Parenthood of Blue Ridge v. Camblos</u>, 155 F.3d 352, 383 n.17 (4th Cir. 1998) ("'There is a presumption that the legislature in the passage of an act did not intend to violate the constitution of the state or of the United States . . . ." (quoting 17 Michie's Jurisprudence of Virginia and West Virginia, Statutes, § 56)).  The word "obscene" therefore is neither unconstitutionally overbroad nor vague, and it remains enforceable.

### b. <u>Vagueness Challenge</u>

As juxtaposed with an overbreadth claim, the test for vagueness is relatively concise.  Vagueness may render a statute unconstitutional under the Due Process Clause of the Fourteenth Amendment in two ways.  <u>City of Chi. v. Morales</u>, 527 U.S. 41, 56 (1999).  "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it

17

prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." Id. A statute does not have to be "mathematically" precise to withstand a vagueness challenge, but "it [must be] clear what the ordinance as a whole prohibits." Grayned v. City of Rockford, 408 U.S. 104, 110 (1972).

The Court holds that section 4.1-225(1)(h)'s prohibition on "noisy . . . conduct" is vague. The ABC Board again insists that, even if the word "noisy," standing alone, is vague, the Virginia Court of Appeals has adopted a narrowing construction that remedies any constitutional infirmity. See Supermarket, 2005 WL 645157, at *3 n.1. The Court finds the ABC Board's argument unpersuasive.

In Supermarket, the Court of Appeals held that the word "noisy" in section 4.1-225(1)(h) is not unconstitutionally vague. Id. at *3. It reasoned that "a person of average intelligence would know what type of conduct is prohibited" because "noisy" has a "well established meaning[]." Id. The court defined "noisy" as a "'loud, confused, or senseless shouting or outcry: din or uproar of persons.'" Id. at *3 n.1 (quoting Webster's Third New International Dictionary 1533 (1981)).

This judicial gloss on the term "noisy" falls short of saving it from a facial attack. Though "loud, confused, or senseless shouting or outcry," or "din or uproar of persons," is

18

admittedly tighter language than "noisy . . . conduct," the judicial constructions are still doubly vague.

Owners and managers of licensed premises, the ones who are subject to discipline pursuant to section 4.1-225(1)(h), do not have the ability to distinguish between shouting that is loud, confused, or senseless and shouting that does not possess one of those traits.  While the noisemaker always knows whether he shouts with a purpose, listeners are not clairvoyant.  Cf. Jim Crocket Promotion, Inc. v. City of Charlotte, 706 F.2d 486, 489 (4th Cir. 1983) (finding phrase "unnecessary noise" unconstitutionally vague); Dupres v. City of Newport, R.I., 978 F. Supp. 429, 433-34 (D.R.I. 1997) ("noise which . . . annoys, disturbs, injures, or endangers the comfort, repose, peace, or safety of any individual" is vague); Dae Woo Kim v. City of New York, 774 F. Supp. 164, 170 (S.D.N.Y. 1991) (same).  Nor does the second half of the definition clarify the word "noisy."  What qualifies as a din or uproar seems wholly subjective.  Under either construction, individuals of "common intelligence must necessarily guess at its meaning."  Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926).

The Court of Appeals's definition of "noisy" is also deficient because it does not provide reasonable standards for enforcement by ABC agents and courts.  The individuals charged with enforcing section 4.1-225(1)(h) have no greater ability to

recognize a violation of the statute than those persons operating establishments subject to its prohibition.  The General Assembly failed to tie the word "noisy" to any "explicit standard[] for enforcement," <u>U.S. Labor Party v. Pomerleau</u>, 557 F.2d 410, 412 (4th Cir. 1977), and <u>Supermarket</u>'s holding does not fix the problem.  The Court therefore preliminarily enjoins enforcement of section 4.1-225(1)(h)'s prohibition of "noisy . . . conduct."

    2.   <u>Other Factors</u>

The Court adopts the analysis of the Fourth Circuit in <u>Carandola I</u> with regard to the three remaining factors to be considered before deciding whether to issue a preliminary injunction.  The Plaintiffs would suffer irreparable injury if this Court did not grant the injunction, because "'loss of First Amendment rights, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  <u>Carandola I</u>, 303 F.3d at 520-21 (quoting <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976)).  Conversely, the ABC Board would suffer no harm from the imposition of an injunction on provisions that chill protected conduct, <u>id.</u> at 521, and any collateral damage easily could be rectified through adoption of a carve-out provision similar to the one approved in <u>Carandola II</u>.  Finally, "upholding constitutional rights surely serves the public interest."  <u>Id</u>.

20

C.   **Scope of the Preliminary Injunction**

Because the Court has declared unconstitutional certain
terms in the challenged statutes, Plaintiffs argue that the Court
should enjoin enforcement of the laws in their entirety
(including plainly constitutional terms).  In support of their
contention, Plaintiffs cite cases where federal courts in
Virginia have refused to strike words from or add words to
private contracts that, if deleted or added, might save them from
invalidation.  See, e.g., Browne v. Kline Tysons Imports, Inc.,
190 F. Supp. 2d 827, 832 (E.D. Va. 2002) (Lee, J.); Roto-Die Co.
v. Lesser, 899 F. Supp. 1515, 1522 (W.D. Va. 1995).

Federal courts have much greater leeway in fashioning
remedies to remove problematic words and phrases in statutes than
they have in altering an agreement between two parties.  Compare
Jim Crockett, 706 F.2d at 489 (enjoining enforcement of word
"unnecessary" to cure vagueness), with Roto-Die, 899 F. Supp. at
1522 (refusing to strike certain words in non-compete agreement
to remove geographic overbreadth).  Rewriting contracts would
"wreak potential havoc with basic contractual principles, such as
mutual assent," but partial invalidation does not have these
types of negative repercussions.  Pitchford v. Oakwood Mobile
Homes, Inc., 124 F. Supp. 2d 958, 966 (W.D. Va. 2000).  Indeed,
partial invalidation lessens the sting of a successful

21

constitutional challenge - it avoids enjoining those portions of
a statute that survive a facial attack.

When certain words or subprovisions of a statute, as opposed
to the statute in its entirety, are overbroad, a court may limit
injunctive relief to the problematic words, phrases, or
subprovisions. See, e.g., Brockett v. Spokane Arcades, Inc., 472
U.S. 491, 506 (1985); Jim Crockett, 706 F.2d at 489; Moore v.
Fowinkle, 512 F.2d 629, 632 (6th Cir. 1975). "Unless the invalid
provisions are deemed so essential . . . that it cannot
reasonably be presumed that the legislature intended the statute
to operate otherwise than as a whole," the statute does not have
to rise or fall as a unit. Moore, 512 F.2d at 632; Strawberry
Hill Land Corp. v. Starbuck, 97 S.E. 362, 364 (Va. 1918).
Moreover, a severability provision affirms the idea that a
legislature would like its statutes to remain enforceable to the
extent that they are constitutional. Hannabass v. Md. Cas. Co.,
194 S.E. 808, 813 (Va. 1938); Strawberry Hill, 97 S.E. at 364.
The Virginia Code includes such a provision. See Va. Code. Ann.
§ 1-243 ("The provisions of acts . . . that are held invalid
shall not affect the validity of other . . . provisions . . .
that can be given effect without the invalid provisions . . .
.").

With the above principles in mind, the Court concludes that
the General Assembly would like the ABC Board to retain the

22

ability to penalize establishments that allow obscene conduct, gambling, or other prohibited conduct on their premises, despite the unenforceability of other prohibitions against "lewd," "disorderly," "lustful," "immoral," "indecent" or "nude" conduct. See, e.g., Brockett, 472 U.S. at 506 ("It would be frivolous to suggest . . . that the Washington Legislature, if it could not proscribe materials that appealed to normal as well as abnormal sexual appetites, would have refrained from passing the moral nuisance statute."); Jim Crockett, 706 F.2d at 489 (finding only the word "unnecessary" unconstitutionally vague in an ordinance prohibiting "unreasonably loud, disturbing or unnecessary noise"); J.L. Spoons, 181 F.R.D. at 358 n.5 (invalidating partially a licensing rule except for its ban of obscene entertainment and materials). Accordingly, the Court excludes from its preliminary injunction those portions of the challenged statutes that prohibit "obscene" conduct.

### III.   Conclusion

For the reasons described above, the Court previously entered a Memorandum Order (Docket No. 23) **GRANTING** in part Plaintiffs' Motion for a Preliminary Injunction (Docket No. 8).

The Clerk is **DIRECTED** to forward a copy of this Opinion to all counsel of record.  The Clerk is further **DIRECTED** to incorporate this Opinion into the appellate record.

23

**IT IS SO ORDERED.**


                                        /s/ WDKjr.
                                  _____
                                        Walter D. Kelley, Jr.
                                  UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
November 21, 2007

24